CAMPBELL v. SANDERS.

SAME v. OLIVER.

SAME v. GRIMKE.

SAME v. BEATTIE.

SAME v. DOTHAGE.

SAME v. PETERSEN.

SAME v. OLIVER.

SAME v. WHALEY.

SAME v. HOFFMAN.

SAME v. LAFFAN.

SAME v. REHKOPF.

1. COSTS are purely of statutory origin, and cannot be recovered except where some statute allows them. The right to costs not being conferred by the act which provides a mode for the distribution of the direct taxes refunded by the United States government, no costs can be allowed to a successful party in a proceeding under this act.

2. IBID.—COURTS—SPECIAL TRIBUNAL.—The parties in this case cannot claim costs under the right to costs given by section 331 of the Code of Procedure to the successful appellant from "the decision of a court of inferior jurisdiction in a special proceeding," as the act does not create any inferior court, but merely designates the masters as a temporary commission to pass upon the distribution of a fund which the State held in trust. The jurisdiction of the masters not being limited to $100, and the judgment of the Court of Common Pleas on appeal being declared final, shows that the legislature did not intend to create this tribunal as an inferior court; for,

if so, its jurisdiction could not exceed $100, and appeals would lie to the Supreme Court under the Constitution of this State.

Before IZLAR, J., Charleston, June, 1893.

These were eleven separate proceedings instituted by Mary B. Campbell, as administratrix of James B. Campbell, deceased, and W. H. Trescot and W. E. Earle against Samuel Sanders and ten other parties. The Circuit decree was as follows:

The foregoing cases are known as "Direct Tax Claims." It appears that from the judgments of the special commissioner, Master Miles, in these cases, an appeal was taken to this court under and by virtue of the authority granted by the act of the General Assembly entitled "An act to provide a mode of distribution of the moneys collected as direct tax from the citizens of this State by the United States, and turned over in trust to the State of South Carolina," approved December 24th, 1891 (20 St., p. 1067). The appeals in these cases were heard by his honor, Judge Hudson, who, after a careful consideration of the grounds, ordered that the several appeals be dismissed. Afterwards these cases were taken to the Supreme Court of the United States on writs of error allowed by one of the justices of said court, and there the appeals were again dismissed.

On receipt of the mandates from the Supreme Court of the United States, the attorneys representing the several defendants applied to the clerk of this court to have the costs in these cases taxed and adjusted. Objection was made by the attorneys for plaintiffs on various grounds. The clerk held "that he had nothing to do with the costs of the United States Supreme Court, but would proceed to tax the costs in the Court of Common Pleas." The costs in the Court of Common Pleas were taxed by the clerk in each case as follows: for attorneys of appellee, $15.00; for clerk, $8.15; total, $23.15. From this taxation the plaintiffs appealed to this court on the several grounds stated in the notice. These appeals were heard by me at the June term, 1893, of the Court of Common Pleas for said county. After argument I took the papers and reserved my decision, as I deemed the legal questions involved not altogether free from doubt.

The following propositions may, I think, be safely asserted: There were no costs, *co nomine*, at common law. Costs are recoverable at law only by force of statute, and depend upon the terms of the statute strictly construed. Neither court, jury or referee can award costs unless the same are authorized by law. The party claiming costs in any action or special proceeding must, therefore, put his finger upon the statute which allows the same, before he can legally demand them. The act of the 24th December, 1891, above mentioned, makes no provision for costs in case of appeal to this court from the judgment of the master as special commissioner. It is admitted on all sides that the proceedings before the master in these cases were not actions, but special proceedings.

Now, is there any statute which allows costs in cases of this nature? Section 331 of the Code provides that "When the decision of a court of inferior jurisdiction in a special proceeding * * shall be brought before the Circuit Court for review, such proceedings shall, for all purposes of costs, be deemed an action at issue, on a question at law, from the time the same shall be brought into court, and costs thereon shall be awarded and collected as provided by law." The second paragraph of section 326 of the Code provides that "Whenever it shall be necessary to adjust costs * * in any special proceedings, the same shall be adjusted by the judge before whom the same may be heard, or the court before which the same may be decided or pending, or in such other manner as the judge or court may direct." Now even if it be admitted that the judgment of Master Miles was the decision of an inferior court in a special proceeding, and falls within the provisions of section 331 of the Code, no direction has been given by any judge or court to the clerk of this court to tax and adjust the costs in these cases. The taxation of costs in these cases by the clerk was, therefore, without direction or authority. But I do not regard the judgment of Master Miles in these cases as the decision of a court of inferior jurisdiction. I do not think the legislature, in providing for the appointment of a commissioner before whom direct tax claims should be proved, intended to create, or did create, a court of inferior jurisdiction. The jurisdiction of Master Miles

in passing upon these claims extended to claims over $100. The case of *City Council* v. *Ashley Phosphate Co.*, 33 S. C., 25, is, I think, authority for holding that, under the constitutional provisions authorizing the establishment of "such municipal and other inferior courts as may be deemed necessary," the General Assembly cannot create an inferior court with jurisdiction in civil cases over $100. In this case, Simpson, C. J., after discussing the several constitutional provisions relating to the subject, says: "We think, therefore, that it would be the exercise of unconstitutional power on the part of the General Assembly to attempt to create an inferior court with jurisdiction in civil cases over $100." Master Miles, as said by Judge Hudson in his Circuit decree in these cases, filed July 14th, 1892, was "a special commissioner, as it were, created for a special purpose, and with limited jurisdiction, * * * His duty is to ascertain the real claimants and the amount due to each one, and to certify his findings to the governor." My opinion, therefore, is that costs in these cases cannot be allowed under the provisions of section 331 of the Code. Outside of this section of the Code, my attention has not been directed to any other statute whereby costs might be allowed in these cases, and in my investigation I have discovered none. It is, therefore, ordered and adjudged, that the appeals in these cases be sustained, that the taxations of costs therein made by the clerk of this court be and the same are hereby set aside, and that costs in said cases be disallowed.

Defendants appealed.

*Messrs. E. B. Hollings, F. A. Dothage,* and *S. J. Lee,* for appellants.

*Messrs. Mitchell & Smith* and *McCradys & Bacot,* contra.

December 8, 1894. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The eleven cases above stated all depending upon the same facts, were heard and will be considered together. The facts are so fully and clearly stated in the decree of his honor, Judge Izlar, which should be incorpo-

rated in the report of this case, that it is unnecessary to repeat them here. It is sufficient to say that these were claims presented by the several appellants to Master Miles for their respective portions of the fund appropriated by the United States government for the purpose of refunding the direct taxes imposed and collected by that government, which fund had been placed in the hands of the State government, and its distribution provided for by the act of 1891 (20 Stat., 1067), entitled "An act to provide a mode of distribution of the money collected as direct tax from the citizens of this State by the United States, and turned over in trust to the State of South Carolina."

It appears that the respondents herein filed their petition before Master Miles, praying to be allowed to intervene and set up their claims against the several claimants (appellants herein) for portions of the several amounts found to be due such claimants respectively. The master declined to consider such petition, and from his refusal to do so the respondents herein appealed to the Court of Common Pleas, where their several appeals were dismissed. Thereupon the appellants herein applied to and obtained from the clerk of the Court of Common Pleas a taxation of their costs incurred under said appeals. To such taxation of costs the respondents herein excepted, and the cases went before his honor, Judge Izlar, upon such exceptions, who rendered judgment sustaining the exceptions, and adjudging that the appellants herein were not entitled to costs. From this judgment these appeals have been taken upon the several grounds set out in the record, which need not be repeated here, as the sole question is whether the appellants are entitled to costs in a proceeding of this kind.

It is well settled that the right to costs is of purely statutory origin, and hence when any one sets up a claim for costs, he must point out the statute conferring the right to costs in the case in which such right is asserted. *State ex rel. Bull* v. *County Treasurer*, 10 S. C., 40; *Scott* v. *Alexander*, 27 S. C., 15. We do not think that there is any statute conferring the right to costs in a proceeding of this kind. It is very clear that the act of 1891, above referred to, does not confer the right to costs. On the contrary, while it does provide for the com-

pensation of the commissioner sent to Washington, and for the compensation of the masters, as well as for the payment of certain other expenses incurred in carrying out the provisions of the act, it is entirely silent as to any costs to be allowed the parties, or any officials other than those above named.

It is contended, however, that the right to costs is secured by the provisions of section 331 of the Code of Procedure. That section reads as follows: "When the decision of a court of inferior jurisdiction in a special proceeding, including appeals from the probate courts, shall be brought before the Circuit Court for review, such proceeding shall, for all purposes of costs, be deemed an action at issue, on a question of law, from the time the same shall be brought into court, and costs thereon shall be awarded and collected as provided by law." It will be observed that this section applies only to cases, "when the decision of *a court of inferior jurisdiction*, in a special proceeding, including appeals from the probate courts, shall be brought before the Circuit Court for review." Hence, in order to make this section applicable, it is necessary to ascertain whether Master Miles had been constituted *a court* of inferior jurisdiction by the act of 1891. When the State, under the provisions of the act of Congress, received the money appropriated to refund the direct taxes collected during the war, it thereby became a trustee for those entitled to share in that fund, as is expressly recognized in the title of the act of 1891, and, but for its sovereignty, would have been liable to an action to account for such fund.

Inasmuch, however, as the State cannot be sued in its own courts except by its own consent, the act of 1891 was passed, in pursuance of section 4 of article XIV. of the Constitution, whereby the General Assembly is authorized to "direct by law in what manner claims against the State may be established and adjusted," simply for the purpose of enabling those interested in the direct tax fund to have their claims against the State established and adjusted. We do not find anything in the act of 1891 which indicates an intention on the part of the legislature to constitute either of the masters therein referred to *a court*, in the sense of that term as used in the Constitution. On the

contrary, the provision in section 5 of that act, authorizing an appeal to the Court of Common Pleas, followed immediately by the words, "whose judgment shall be final," clearly indicates that the legislature did not intend to create *a court;* for if it had, then either party would have had the constitutional right to invoke the judgment of the Supreme Court, and the judgment of the Court of Common Pleas could not properly have been declared to be *"final."* Again, if the legislature had intended to create a court, it could only do so under the provisions contained in section 1 of article IV. of the Constitution, authorizing the General Assembly to "establish such municipal and other inferior courts as may be deemed necessary;" and if they acted under that authority, then the jurisdiction of the court thus established would have been necessarily limited to claims not exceeding one hundred dollars. See *City Council* v. *Ashley Phosphate Co.*, 33 S. C., 25.

But, as we have said, we do not think that the legislature intended to create a court at all, but simply a temporary commission or tribunal, for a specific, temporary purpose, to ascertain certain claims of a certain character against the State, just as was done in case of the tribunal presided over by Hon. James C. Coit, which this court held, in *Ex parte Childs*, 12 S. C., 111, was *not* a court. Indeed, that case was stronger than this, for there the tribunal was called in the act establishing it "a court," while in the act of 1891 we find nothing of the kind. If, then, Master Miles was not constituted *a court* by the act of 1891, then section 331 of the Code does not apply, and there is no statute allowing costs in a proceeding of this kind.

It is the judgment of this court, that the judgment of the Circuit Court be affirmed.